## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| GLORIA FLUDD<br>430 Browning Road, Apt. Z5<br>Bellmawr, NJ 08031<br>        and<br>SHAKARA FLUDD<br>430 Browning Road, Apt. Z5<br>Bellmawr, NJ 08031<br>                Plaintiffs,<br><br>        v.<br><br>EVANS & SANTARELLI, INC.<br>*d/b/a* CHEERLEADERS and/or<br>CHEERLEADERS GENTLEMEN'S<br>CLUB(S)<br>2740 South Front Street<br>Philadelphia, PA 19148<br>        and<br>M.A.G. ENTERPRISES, INC.<br>*d/b/a* CHEERLEADERS and/or<br>CHEERLEADERS GENTLEMEN'S<br>CLUB(S)<br>2740 South Front Street<br>Philadelphia, PA 19148<br>        and<br>MAG PITT, L.P. *d/b/a* CHEERLEADERS<br>and/or CHEERLEADERS GENTLEMEN'S<br>CLUB(S)<br>3100 Liberty Avenue<br>Pittsburgh, PA 15201<br><br>                Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CIVIL ACTION<br><br>NO.: _____<br><br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Gloria and Shakara Fludd (*hereinafter* collectively referred to as "Plaintiffs," unless indicated otherwise) by and through their undersigned counsel, hereby aver as follows:

**INTRODUCTION**

1. Plaintiffs have initiated this action to redress violations by Evans & Santarelli, Inc. *d/b/a* Cheerleaders and/or Cheerleaders Gentlemen's Club(s); M.A.G. Enterprises, Inc. *d/b/a* Cheerleaders and/or Cheerleaders Gentlemen's Club(s); and MAG PITT L.P. *d/b/a* Cheerleaders and/or Cheerleaders Gentlemen's Club(s) (*hereinafter* collectively referred to as "Defendants") of Section 1981 of the Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981), and the New Jersey Law against Discrimination ("NJ LAD").  As a direct consequence of Defendants' unlawful actions, Plaintiffs seeks damages as set forth herein.

**JURISDICTION AND VENUE**

2. This Court may properly maintain jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co v. State of Washington*, 326 U.S. 310 (1945), and its progeny.

3. This action is initiated pursuant to a federal law.  The United States District Court for the District of New Jersey has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact.

4. Venue is properly laid in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), because Defendants reside in and/or conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.  For example:

    a. Plaintiff Gloria Fludd lives in Bell Mawr, New Jersey;

    b. Plaintiff Shakara Fludd lives in Bell Mawr, New Jersey;

    c. Plaintiffs were hired to work in and performed a significant amount of work for Defendants' New Jersey Cheerleaders location at 54 Crescent Blvd., Gloucester, City, New Jersey; and

    d. Plaintiffs were terminated while working for Defendants in New Jersey.

## PARTIES

5. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

6. Plaintiff Gloria Fludd (*hereinafter* "Plaintiff GF") is an adult who resides at the above-captioned address.

7. Plaintiff Shakara Fludd (*hereinafter* "Plaintiff SF") is an adult who resides at the above-captioned address.

8. Evans & Santarelli, Inc. *d/b/a* Cheerleaders and/or Cheerleaders Gentlemen's Club(s) is a Pennsylvania corporation that operates gentlemen's entertainment clubs in Pennsylvania and New Jersey, with a location at the above-captioned address.

9. M.A.G. Enterprises, Inc. *d/b/a* Cheerleaders and/or Cheerleaders Gentlemen's Club(s) is a Pennsylvania corporation that operates gentlemen's entertainment clubs in Pennsylvania and New Jersey, with a location at the above-captioned address.

10. MAG PITT L.P. *d/b/a* Cheerleaders and/or Cheerleaders Gentlemen's Club(s) is a Pennsylvania corporation that operates gentlemen's entertainment clubs in Pennsylvania and New Jersey, with a location at the above-captioned address.

11. Because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial controls, and other factors,

Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single and/or joint employer for purposes of the instant action.

12. At all times relevant herein, Defendants acted through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

**FACTUAL BACKGROUND**

13. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

14. Plaintiffs GF and SF are black (African-American) females.

15. Plaintiff GF worked for Defendants as an independent contractor, more specifically, an Entertainer for Defendants' Cheerleaders Gentlemen's Club in Gloucester City, New Jersey, for approximately 3 years before her unlawful termination (as discussed *infra*) on or about February 7, 2021.

16. Plaintiff SF worked for Defendants as an independent contractor, more specifically, an Entertainer for Defendants' Cheerleaders Gentlemen's Club in Gloucester City, New Jersey, for approximately 1½ years before her unlawful termination (as discussed *infra*) on or about February 7, 2021.

17. During the Plaintiffs' tenure with Defendants, they were primarily supervised by Manager, Jeremy (last name unknown, *hereinafter* "Jeremy") and "House Mother," Anya (last name unknown, *hereinafter* "Anya").

18. The aforesaid supervisors were Caucasian and/or non-black, as were the majority (if not all) members of management and Defendants' security guards.

19. During their tenure with Defendants, Plaintiffs worked hard and performed their jobs well.

20. Upon Plaintiff's observations and belief, Defendants' work environment has been disparate and unfairly harsh toward black Entertainers, and Defendants' workforce was comprised of almost 90% Caucasian and/or non-black Entertainers.

21. Throughout the course of Plaintiffs' tenure with Defendants, they and other black Entertainers were subjected to race discrimination, harassment, and disparate treatment by Defendants' Caucasian and/or non-black management, security officers, and co-workers. For example, but not intended to be an exhaustive list, unlike Defendants' Caucasian and/or non-black Entertainers:

   a. Plaintiffs and other black Entertainers and staff were treated in a rude and demeaning manner, often screamed and cursed at and talked down to;

   b. Caucasian and other non-black Entertainers were given preferential treatment and opportunities that black Entertainers were not given (i.e., Caucasian Entertainers were given "Cheerleader Cards" to hand out to patrons, with a $50 bonus given to the Caucasian Entertainers for every 5 cards given, while Plaintiffs and other black Entertainers were never given this opportunity);

   c. Policies were selectively enforced against Plaintiff and other black Entertainers (i.e., Caucasian Entertainers were routinely permitted to sit on the laps of patrons (which garnered more tip money); however, black Entertainers were routinely screamed at and removed from patrons for allegedly violating Defendants' policies);

  d. Defendants' Caucasian and/or non-black management showed a clear preference for hiring Caucasian and/or non-black Entertainers; and

  e. Plaintiffs and other black Entertainers were issued pretextual discipline and/or terminated for petty reasons while Caucasian and/or non-black Entertainers were not disciplined or terminated for same.

22. In addition to the foregoing instances of hostility, animosity, and disparate treatment, during the last approximate 6 months of Plaintiffs' tenure with Defendants, a Caucasian Entertainer, who goes by the stage name "Selena," and at least one other Caucasian Entertainer, began to harass and discriminate against Plaintiffs by physically bumping into them and telling patrons not to tip them.

23. Plaintiffs objected to/complained of the aforementioned hostile work environment (*see* Paragraphs 21-22, *supra*) on multiple occasions to Defendants' Caucasian and/or non-black management, including but not limited to Jeremy.  However, instead of meaningfully addressing or investigating Plaintiffs' concerns, Jeremy routinely sent Plaintiffs home for the remainder of their shift as discipline and/or hostility informed them, "if you don't like the way I speak to you, you don't have to work here."  Defendants' Caucasian and or non-black Entertainers were not subjected to this disparate, discriminatory, and retaliatory treatment.

24. For example, on or about February 7, 2021, Selena and another Caucasian Entertainer once again harassed Plaintiffs by bumping into them and informing their patrons not to tip them.  When Plaintiff GF calmly confronted Selena about why she continued to harass Plaintiffs, Selena and her friend began to scream and yell, with Selena stating she would "fight and beat any bitch up in here."

25. Despite the fact Plaintiffs were calmly addressing their Caucasian co-workers about the harassment that were being subjected to on or about February 7, 2021, while their Caucasian co-workers were screaming, threatening, and disrupting Defendants' workplace, Jeremy hostilely informed Plaintiffs that they needed to "shut the f**k up and get the f**k out, you are fired."

26. Thus, Plaintiffs were unlawfully terminated for objecting to/complaining of discriminatory and harassing behavior by Caucasian Entertainers, while the Caucasian Entertainers' unlawful behavior was effectively condoned/rewarded by Defendants' Caucasian and/or non-black management, as the Caucasian Entertainers were retained over Plaintiffs. Upon information and belief, Selena and the other Caucasian Entertainer involved in the February 7, 2021 incident are still working for Defendants.

27. Following Plaintiffs' unlawful termination, "House Mother" Anya, called Plaintiffs and advised them that "you didn't hear this from me, but you should sue [Defendants'] ass for f***ing racism." Anya further confirmed that Plaintiffs and other black Entertainers[1] were treated unfairly because of their race and that Defendants' DJs, office staff, and management routinely made derogatory racial comments about how Defendants' New Jersey location had become "a ghetto club," and a "black girl's club."

28. Plaintiffs believe and therefore aver that they were subjected to a hostile work environment and terminated because of their race and/or in retaliation for their objections to/concerns of race discrimination.

---

[1] Upon Plaintiffs observations and beliefs, as well as comments made by Anya during this phone conversation, at least two other black Entertainers had been terminated before Plaintiffs for objecting to/reporting harassing behavior by Caucasian Entertainers.

29. Plaintiffs' termination from Defendants on or about February 7, 2021, for discriminatory and/or retaliatory reasons, is protected under Section 1981[2] and the NJ LAD.[3]

### COUNT I
### Violations of 42 U.S.C. Section 1981
([1] Race Discrimination; [2] Retaliation; and [3] Hostile Work Environment)
-Against All Defendants-

30. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

31. During the Plaintiffs' employment with Defendants, they were subjected to discrimination and a hostile work environment through disparate treatment, pretextual discipline, and demeaning and/or derogatory treatment because of their race.

32. Instead of investigating Plaintiffs' aforesaid objections to/concerns of race discrimination, Defendants' management ignored them and left their legitimate concerns unresolved.

33. Plaintiffs' were ultimately terminated on or about February 7, 2021, for completely discriminatory and retaliatory reasons.

---

[2] "Independent contractors may pursue relief under § 1981 for discriminatory and retaliatory acts that occurred during the course of their independent contractor relationship." *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181 (3d Cir. 2009); *see also McClain v. Avis Rent a Car Sys.*, 648 F. App'x 218, 222 (3d Cir. 2016) (same); *Danco, Inc. v. Wal-Mart Stores, Inc.*, 178 F.3d 8, 13-14 (1st Cir. 1999) ("The text of section 1981 provides that 'all persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens'. . . Thus, section 1981 'does not limit itself, or even refer, to employment contracts but embraces all contracts and therefore includes contracts by which a[n] . . . independent contractor . . . provides service to another.'"); *Jordan v. Staffing Plus, Inc.*, 315 F. Supp. 3d 844, 847 n.14 (E.D. Pa. 2018) ("When an independent contractor alleges wrongful termination of a contractor relationship, the substantive elements of a claim under section 1981 are generally identical to the elements of an employment discrimination claim under Title VII.") (citation omitted).

[3] *See e,g*, *J.T.'s Tire Servs., Inc. v. United Rentals N. Am., Inc.,* 411 N.J. Super. 236, 240, 985 A.2d 211, 214 (App. Div. 2010) (citing several New Jersey holdings and explaining it is well established an independent contractor is protected against age or health discrimination under the NJ LAD; *see also* N.J. Stat. § 10:5-12(l) (prohibiting non-contracting with anyone for discriminatory reasons).

34. Plaintiffs believe and therefore aver that they were really terminated because of their race and/or their objections to/concerns of race discrimination.

35. These actions as aforesaid constitute unlawful discrimination, retaliation, and a hostile work environment under Section 1981.

## COUNT II
## Violations of the New Jersey Law against Discrimination ("NJ LAD")
([1] Race Discrimination; [2] Retaliation; and [3] Hostile Work Environment)
-Against All Defendants-

36. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

37. During the Plaintiffs' employment with Defendants, they were subjected to discrimination and a hostile work environment through disparate treatment, pretextual discipline, and demeaning and/or derogatory treatment because of their race.

38. Instead of investigating Plaintiffs' aforesaid objections to/concerns of race discrimination, Defendants' management ignored them and left their legitimate concerns unresolved.

39. Plaintiffs' were ultimately terminated on or about February 7, 2021, for completely discriminatory and retaliatory reasons.

40. Plaintiffs believe and therefore aver that they were really terminated because of their race and/or their objections to/concerns of race discrimination.

41. Defendants' actions as aforesaid constitute unlawful discrimination, retaliation, and a hostile work environment in violation of the NJ LAD.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B.   Defendants are to compensate Plaintiffs, reimburse Plaintiffs, and make Plaintiffs whole for any and all pay and benefits Plaintiffs would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C.   Plaintiffs are to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D.   Plaintiffs are to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation);

E.   Plaintiffs are to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F.   Plaintiffs shall be permitted to have a trial by jury as requested in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
3331 Street Rd.
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated:  February 23, 2021